**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **SHERRIE ARTHUR STONE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION 07-0681-WS-M** |
| ) | |
| **RICHARD ALLEN, Commissioner,** ) | |
| **Alabama Department of Corrections,** ) | |
| ***et al.,*** ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This matter is before the Court on plaintiff's Application for a Temporary Restraining Order / Motion for a Preliminary Injunction (doc. 3), which was filed with notice to defendants at 1:54 p.m. this afternoon.

**I.     Background.**

Plaintiff Sherrie Arthur Stone, who is proceeding *pro se* (at least nominally),[1] is the daughter of Thomas D. Arthur, an Alabama death row inmate who is scheduled to be executed by the State of Alabama at 6:00 p.m. on September 27, 2007 at the Holman Correctional Facility in Atmore, Alabama.  Mr. Arthur is not a party to this proceeding.

Stone's Complaint takes great pains to explain that this lawsuit is not an attempt to stay her father's execution.  Rather, she brings this action pursuant to 42 U.S.C. § 1983, alleging that the State's performance of an autopsy on her father subsequent to the execution would violate her (not her father's) First Amendment right to free exercise of religion.  Stone explains that "[t]he performance of an autopsy on my father's body will be in direct conflict with my sincerely held religious beliefs."  (Stone Aff., ¶ 4.)  The Complaint further alleges that Stone perceives the

---

[1]     The level of sophistication, polish and legal research contained in plaintiff's filings strongly suggest that they were ghostwritten by counsel, and that she did not draft them herself from a Best Western hotel room in Atmore, Alabama, which is her address of record.

performance of an autopsy on Mr. Arthur as "a desecration of his body" and that it is "an unwarranted and unjustified interference with his daughter's right to the possession and disposition of his body." (Complaint, ¶¶ 17, 18.)

Contemporaneously with her Complaint, Stone filed an Application for a Temporary Restraining Order / Motion for a Preliminary Injunction (doc. 3) and accompanying Memorandum (doc. 4), wherein she requests that this Court "[e]nter an Order granting her a temporary restraining order and preliminary injunction" and "enjoin[ing] Defendants from performing an autopsy on Mr. Arthur's body."

## II.    Analysis.

To be eligible for temporary restraining or preliminary injunctive relief under Rule 65, a movant must establish each of the following elements:  (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *Parker v. State Bd. of Pardons and Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001).

After careful consideration of the pleadings, the Court finds that plaintiff has not shown a substantial likelihood of success on the merits.  Stone's § 1983 cause of action is the sole claim set forth in the Complaint; however, plaintiff has failed to show that she possesses a cognizable constitutional interest in preventing the State from performing an autopsy on her father's body following his execution by lethal injection.  The Supreme Court "has always required that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752 (1982).  "The federal courts have abjured appeals to their authority which would convert the judicial process into no more than a vehicle for the vindication of the value interests of concerned bystanders." *Id.*, 454 U.S. at 473 (citation omitted).  In that regard, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.*, 454 U.S. at 474 (citation omitted).  The Supreme Court has not treated this rule as absolute, however, but has recognized a limited exception whereby a party may procure third-party standing by showing both the existence of "a

close relationship with the person who possesses the right" and "a hindrance to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 130, 125 S.Ct. 564 (2004). Here, however, Stone does not invoke third-party standing and makes no showing that her father faces some hindrance to protecting his own constitutional interests.[2] Rather, she purports to be asserting her own constitutional right to preventing an autopsy from being performed on her father.

The obvious question, then, is whether Stone has shown a substantial likelihood that her First Amendment right to the free exercise of religion will be violated by the State's performance of an autopsy on her father. She has not done so. Indeed, Stone does not identify a single authority recognizing a plaintiff's First Amendment right to prevent the performance of an autopsy on a family member's body because of the plaintiff's religious beliefs. To be sure, she delineates two lines of authority, but neither of them supports the viability of the particular claim she asserts here. First, Stone points to two hoary Alabama decisions recognizing certain state-law rights held by the family members of a deceased person. *See Deavors v. Southern Express Co.*, 76 So. 288, 289 (Ala. 1917) (recognizing "the rights of the next of kin ... as to the obsequies and burial of their dead"); *Southern Life & Health Ins. Co. v. Morgan*, 105 So. 161, 167 (Ala.App. 1925) (determining that plaintiff had rights in the body of his son which the law will protect). But plaintiff is not bringing any Alabama state-law claims relating to the disposition of a dead body, but is instead claiming a First Amendment right to block an autopsy from being performed. Neither of these authorities lends support to such a theory; therefore, they are inapposite. Second, Stone identifies several federal district court decisions in which a condemned inmate's objections on Free Exercise grounds to the performance of an autopsy have been upheld. *See, e.g., Workman v. Levy*, 2007 WL 1521000, *2-3 (M.D. Tenn. May 15, 2007) (brother of inmate executed by lethal injection had standing to assert inmate's First Amendment

---

[2] There is no indication and no reason to believe that Arthur faces any such hindrance. He is still living at this time and presumably has access to counsel to file any legal challenges he sees fit, as he has done in this District Court recently. *See Arthur v. Alabama Department of Corrections*, Civil Action 07-0342-WS-C (bringing § 1983 claims challenging Alabama's lethal injection protocol on Eighth Amendment grounds). Had Arthur wished to bring a Free Exercise challenge to the State's autopsy protocols on his own behalf, plaintiff has identified no impediment that would have prevented him from doing so.

free exercise claim because inmate's estate's representative may prosecute inmate's § 1983 claim); *United States v. Hammer*, 121 F. Supp.2d 794, 802 (M.D. Pa. 2000) (precluding government from performing autopsy where condemned inmate's religious beliefs far outweigh government's interest in performing autopsy).  But, as mentioned, in this case Arthur has filed no § 1983 action to preclude an autopsy.  There is no indication in plaintiff's filings that the State's performance of an autopsy on Arthur's body would infringe any religious beliefs of Arthur himself.  *Workman*, *Hammer* and their ilk lend no support to the notion that a plaintiff such as Stone may bring an independent, freestanding Free Exercise claim to stop an autopsy from being performed on a relative whose execution is imminent but who has lodged no legal challenge to the autopsy himself.

Furthermore, the Court's research has disclosed a number of federal authorities that appear contrary to Stone's position in this case.  *See Arnaud v. Odom*, 870 F.2d 304, 311 & n.2 (5th Cir. 1989) (rejecting parents' claim that deputy coroner's medical experimentation on body of child violated their First Amendment right to bury infant in manner consistent with their religious beliefs, inasmuch as the constitutional umbrella could not be extended to encompass next of kin's state law rights in that regard); *Love v. Bolinger*, 927 F. Supp. 1131, 1136 n.7 (S.D. Ind. 1996) ("there is no constitutional interest implicated by autopsies performed on a relative's body"); *Tafoya v. Bobroff*, 865 F. Supp. 742, 751-52 (D.N.M. 1994) (finding that plaintiff had no constitutional deprivation when government allegedly ordered drug and alcohol tests to be performed on relative's corpse); *Yang v. Sturner*, 750 F. Supp. 558, 560 (D.R.I. 1990) (overruling plaintiffs' religious objection to autopsy of son where state statute governing autopsies is a facially neutral law); *Montgomery v. County of Clinton, Mich.*, 743 F. Supp. 1253, 1260 (W.D. Mich. 1990) (finding that while government officials' authorization of autopsy on plaintiff's son may have had incidental effect on plaintiff's practice of her religion, that effect does not offend the First Amendment); *see generally Thiry v. Carlson*, 78 F.3d 1491, 1496 (10th Cir. 1996) ("a law that is religion-neutral and generally applicable does not violate the Free Exercise Clause even if it incidentally affects religious practice").

## III.   Conclusion.

For all of these reasons, it is the opinion of this Court that plaintiff has failed to make the required showing of a substantial likelihood of success because she has not cited any authority

tending to show that the performance of an autopsy on her father will amount to a cognizable deprivation of her First Amendment rights to the free exercise of her religious beliefs.  Plaintiff's Application for a Temporary Restraining Order / Motion for a Preliminary Injunction (doc. 3) is therefore **denied**.

DONE and ORDERED this 25th day of September, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE