IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHERRIE ARTHUR STONE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 07-0681-WS-M |
| ) | |
| RICHARD ALLEN, Commissioner, ) | |
| Alabama Department of Corrections, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter is before the Court on Defendants' Motion to Dismiss (doc. 8) pursuant to Rule 12(b)(6), Fed.R.Civ.P. Court-ordered briefing deadlines having expired, the Motion is ripe for disposition at this time.

**I.     Background.**

On September 25, 2007, plaintiff Sherrie Arthur Stone, who is proceeding *pro se*, filed a Complaint (doc. 1) against various Alabama state officials. The Complaint (which appears to have been written by an unidentified attorney) reflects that Stone is the daughter of Thomas D. Arthur, an Alabama death row inmate who is scheduled to be executed by the State of Alabama next week at the Holman Correctional Facility in Atmore, Alabama.[1]

Stone brought her Complaint pursuant to 42 U.S.C. § 1983, alleging that the State's contemplated autopsy on her father subsequent to his execution would violate her (not her father's) First Amendment right to free exercise of religion. In that regard, the Complaint

---

[1] As of the date of the filing of the Complaint, Arthur's execution had been set for September 27, 2007, just two days later. However, Alabama Governor Bob Riley then stayed that execution date for a period of 45 days. On October 31, 2007, the Alabama Supreme Court set an execution date for Mr. Arthur of December 6, 2007. *See Arthur v. Allen*, 2007 WL 4105113, *1 (S.D. Ala. Nov. 15, 2007) (reciting procedural history of execution settings for Arthur).

alleges that Stone perceives the performance of an autopsy on Mr. Arthur as "a desecration of his body" and that it is "an unwarranted and unjustified interference with his daughter's right to the possession and disposition of his body." (Complaint, ¶¶ 17, 18.)  Arthur, who is very much alive at the present time, is not a party to this proceeding, and to the Court's knowledge has never alleged in this case or any other that the performance of an autopsy on his body would infringe upon any of his religious convictions.

Contemporaneously with her Complaint, Stone filed an Application for a Temporary Restraining Order / Motion for a Preliminary Injunction (doc. 3), wherein she requested that this Court enjoin defendants from performing an autopsy on Arthur's body.  On September 25, 2007, the undersigned entered an Order (doc. 5) denying that application on the ground that Stone had failed to demonstrate a substantial likelihood of success on the merits, as required for relief under Rule 65, Fed.R.Civ.P.  In so ruling, the Court made the following findings and observations: (1) Stone does not invoke third-party standing principles, but instead is "asserting her own constitutional right to preventing an autopsy from being performed on her father"; (2) "Stone does not identify a single authority recognizing a plaintiff's First Amendment right to prevent the performance of an autopsy on a family member's body because of the plaintiff's religious beliefs"; and (3) "the Court's research has disclosed a number of federal authorities that appear contrary to Stone's position."  (Doc. 5, at 3-4.)

Defendants have now filed a Motion to Dismiss (doc. 8) echoing the reasoning of the September 25 Order concerning whether Stone's claims are actionable under the First Amendment, and also challenging her standing to file this lawsuit.  On October 18, 2007, the undersigned entered an Order (doc. 9) directing that any opposition to the Rule 12(b) Motion must be submitted on or before October 31, 2007.  Stone did not acknowledge the October 18 Order and has failed to submit a brief in opposition to the Motion to Dismiss.  Courts are not obligated to read a party's mind or to construct arguments that it has failed to raise and that are not reasonably presented in the court file.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it ...."); *see also Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) (declaring that a "party who aspires to oppose a ... motion must spell out his arguments squarely and distinctly, or else forever

hold his peace," as district court may ignore arguments not adequately developed by nonmovant).  Clearly, "the onus is upon the parties to formulate arguments."  *Resolution Trust*, 43 F.3d at 599; *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp.2d 1228, 1236 (M.D. Ala. 2000) ("It is not for the court to manufacture arguments on Plaintiff's behalf.").  Accordingly, plaintiff's decision not to respond to the Motion is at her peril.

## II.     Legal Standard.

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff.  *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).  Thus, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).  The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(2), Fed.R.Civ.P.  While a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007).  The rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 1974; *see also Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (explaining that "factual allegations in a complaint must possess enough heft to set forth a plausible entitlement to relief") (citation omitted).  The Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  *Erickson*, 127 S.Ct. at 2200 (quoting *Twombly*, 127 S.Ct. at 1964).  Thus, the proper test is whether the Complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Financial Sec.*, 500 F.3d at 1282-83 (citation and internal quotations omitted).

The Court notes that Stone appears herein without formal representation of counsel.  The law is clear that "[a] document filed *pro se* is to be liberally construed ... and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson*, 127 S.Ct. at 2200; *see also Trawinski v. United Technologies*,

313 F.3d 1295, 1297 (11th Cir. 2002) (similar).  That said, nothing in that leniency would excuse a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure.[2]  Moreover, the leniency to which *pro se* litigants are entitled "does not give a court license to serve as *de facto* counsel for a party ... or to rewrite an otherwise deficient pleading in order to sustain an action."  *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).  "Even though a *pro se* complaint should be construed liberally, a *pro se* complaint still must state a claim upon which the Court can grant relief."  *Grigsby v. Thomas*, 506 F. Supp.2d 26, 28 (D.D.C. 2007).  The Court's analysis of the Motion to Dismiss proceeds in recognition of these principles.

### III.  Analysis.

The plain language of the Complaint confirms that Stone is not bringing this action to enforce, uphold or protect her father's religious beliefs; rather, her theory of recovery is that her own First Amendment right to the free exercise of religion would be infringed upon if the State conducted an autopsy on her father's body.[3]  Thus, as her sole ground for seeking relief in this case, Stone purports to be asserting her own constitutional right to preventing an autopsy from being performed on her father.

As defendants point out, there are at least two independent defects in that claim.  First, the unadorned statement in the Complaint that the performance of an autopsy on her father

---

[2]     *See, e.g.,* Local Rule 83.9(b) ("All litigants proceeding *pro se* shall be bound by and comply with all local rules of this Court, and the Federal Rules of Civil and Criminal Procedure, unless otherwise excused from operation of the rules by court order."); *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) ("Despite construction leniency afforded *pro se* litigants, we nevertheless have required them to conform to procedural rules."); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure").

[3]     This construction of the Complaint is reinforced by several allegations therein.  For example, the Complaint provides that "[b]ased on her sincerely held religious beliefs, Ms. Stone strongly objects to the treatment of Mr. Arthur's body ... as it amounts to a desecration of his body."  (Complaint, ¶ 18.)  Likewise, under the heading "Violation of the First Amendment Right to Free Exercise of Religion," Stone alleges that "Ms. Stone's sincerely held religious beliefs outweigh any interest the State of Alabama may have in performing an autopsy on Mr. Arthur's body."  (*Id.*, ¶ 22.)

would violate Stone's own "sincerely held religious beliefs" is too conclusory to withstand Rule 12(b)(6) scrutiny under a *Twombly* analysis. *See Twombly*, 127 S.Ct. at 1965 (explaining that to survive a Rule 12(b)(6) motion a complaint must provide "more than labels and conclusions" and "must be enough to raise a right to relief above the speculative level"). Merely labeling Stone's distaste for autopsies as a "sincerely held religious belief," with no elaboration, does not suffice to establish that her beliefs are religious in nature, rather than mere personal preferences. *See, e.g., Wisconsin v. Yoder*, 406 U.S. 205, 216, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (a belief which is "philosophical and personal rather than religious ... does not rise to the demands of the Religion Clauses"); *DeHart v. Horn*, 227 F.3d 47, 51 (3rd Cir. 2000) ("The mere assertion of a religious belief does not automatically trigger First Amendment protections, however. ... [O]nly those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection."); *Love v. Reed*, 216 F.3d 682, 687 (8th Cir. 2000) ("First Amendment protection only attaches to beliefs rooted in religion, as opposed to purely secular beliefs or personal preferences."). From Stone's skeletal Complaint, it is impossible to tell (other than by the conclusory label she applies) whether the "belief" in question is religious in nature, as opposed to being a personal or philosophical preference, such that the right to relief is merely speculative. Thus, the Complaint falls short of minimum pleading requirements of Rule 8(a)(2).

More importantly, the entire premise of the Complaint - namely, that Stone has a constitutional right to block an autopsy on a relative if it conflicts with her religious beliefs - appears devoid of legal support. As the September 25 Order indicated, the Court's research has not revealed any authority recognizing an individual's First Amendment right to dictate the treatment of a parent's body in a manner that accords with the individual's (not the parent's) religious beliefs. Numerous decisions have found to the contrary in analogous settings. *See Arnaud v. Odom*, 870 F.2d 304, 311 & n.2 (5th Cir. 1989) (rejecting parents' claim that deputy coroner's medical experimentation on body of child violated their First Amendment right to bury infant in manner consistent with their religious beliefs, inasmuch as the constitutional umbrella could not be extended to encompass next of kin's state law rights in that regard); *Love v. Bolinger*, 927 F. Supp. 1131, 1136 n.7 (S.D. Ind. 1996) ("there is no constitutional interest implicated by autopsies performed on a relative's body"); *Tafoya v. Bobroff*, 865 F. Supp. 742, 751-52 (D.N.M. 1994) (finding that plaintiff had no constitutional deprivation when government

allegedly ordered drug and alcohol tests to be performed on relative's corpse).  Additionally, courts have routinely found that religion-neutral laws of general application do not violate the Free Exercise Clause even when they incidentally burden religious conduct.  *See, e.g., City of Boerne v. Flores*, 521 U.S. 507, 535, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) ("When the exercise of religion has been burdened in an incidental way by a law of general application, it does not follow that the persons affected have been burdened any more than other citizens, let alone burdened because of their religious beliefs."); *Smith v. Allen*, 502 F.3d 1255, 1265 (11th Cir. 2007) (tracing history of law for proposition that, absent exceptions not present here, "laws of general applicability that only incidentally burden religious conduct do not offend the Free Exercise Clause of the First Amendment").[4]  Section 36-18-2 of the Alabama Code, which authorizes the autopsy in question here, is unquestionably a facially neutral law that falls squarely within this line of precedent.

In response to defendants' arguments and authorities, as well as those set forth in the September 25 Order, Stone is silent.  It is impossible to fathom whether she acquiesces to the foregoing analysis, much less whether she has formulated any arguments or located any authorities to the contrary.  To the extent that counterarguments might exist, it is not the function of this Court to make them for plaintiff, to do plaintiff's research for her, or otherwise to assume the role of advocate on her behalf, irrespective of her *pro se* status.  *See, e.g., GJR Investments*, 132 F.3d at 1369 (cautioning district courts not to "serve as *de facto* counsel for a party" appearing without counsel); *Pinckney v. Ozmint*, 490 F. Supp.2d 670, 675 (D.S.C. 2007) (notwithstanding deference owed to *pro se* pleadings, "a court may not construct the plaintiff's legal arguments for him"); *Calia v. Werholtz*, 426 F. Supp.2d 1210, 1214 (D. Kan. 2006) (stating that "court is not authorized to become the advocate for the *pro se* litigant," and "the court will

---

[4] *See also Thiry v. Carlson*, 78 F.3d 1491, 1496 (10th Cir. 1996) ("a law that is religion-neutral and generally applicable does not violate the Free Exercise Clause even if it incidentally affects religious practice"); *Yang v. Sturner*, 750 F. Supp. 558, 560 (D.R.I. 1990) (overruling plaintiffs' religious objection to autopsy of son where state statute governing autopsies is a facially neutral law); *Montgomery v. County of Clinton, Mich.*, 743 F. Supp. 1253, 1260 (W.D. Mich. 1990) (finding that while government officials' authorization of autopsy on plaintiff's son may have had incidental effect on plaintiff's practice of her religion, that effect does not offend the First Amendment).

not construct arguments or theories for the plaintiff"). Even if such an obligation could be imposed on this Court, the undersigned has been unable to identify any viable theory by which Stone might maintain a § 1983 claim predicated on alleged infringement of her free exercise of religion if defendants perform an autopsy on her father's body pursuant to a state law of general applicability that only incidentally (if at all) burdens Stone's free exercise of her religious beliefs. Therefore, the Motion to Dismiss is due to be granted pursuant to Rule 12(b)(6), Fed.R.Civ.P.

Having so determined, the question becomes whether the dismissal should take effect at this time or whether Stone should be given an opportunity to replead her claims. The law in this Circuit is clear that "[o]rdinarily, a party must be given at least one opportunity to amend before the district court dismisses the complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005). Stone has not requested such an opportunity here. That omission would be fatal if plaintiff were represented by counsel. *See Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."). However, the Eleventh Circuit has never announced whether the *Wagner* rule applies to claims brought by a *pro se* plaintiff, and the Court will assume for purposes of this Order that it does not.[5]

Even if *Wagner* does not apply and even if a *pro se* plaintiff is generally entitled to leave to amend her complaint *sua sponte*, leave to amend need not be provided where any amendment would be futile. *See, e.g., Sibley v. Lando*, 437 F.3d 1067, 1073 (11th Cir. 2005); *O'Halloran v. First Union Nat. Bank of Florida*, 350 F.3d 1197, 1206 (11th Cir. 2003). In this case, it is evident that any attempt by Stone to replead her Complaint would be futile because of the glaring legal defects identified above. Accordingly, the Court declines to grant Stone an opportunity, *sua*

---

[5] To the contrary, the *Wagner* court specifically declined to reach that issue. *See Wagner*, 314 F.3d at 542 n.1 ("In this opinion, we decide and intimate nothing about a party proceeding *pro se*.").

*sponte*, to amend her Complaint.[6]

**IV.  Conclusion.**

For all of the foregoing reasons, the Motion to Dismiss (doc. 8) is **granted**, and the Complaint is **dismissed without prejudice**. A separate judgment will enter.

DONE and ORDERED this 26th day of November, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[6] Besides, where, as here, a plaintiff's claims are dismissed without prejudice, any harm to plaintiff by virtue of not granting her leave to amend her complaint *sua sponte* prior to such dismissal is attenuated. *See, e.g., Bazrowx v. Scott,* 136 F.3d 1053, 1054-55 (5th Cir. 1998) (dismissal of *pro se* complaint without granting leave to amend was proper where dismissal was without prejudice); *Moawad v. Childs*, 673 F.2d 850, 851-52 (5th Cir. 1982) (dismissal of *pro se* plaintiff's deficient complaint should be without prejudice to allow leave to refile).